**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Respondent, | NOS. 1:25-CV-05215<br>1:21-CR-00703-2 |
| v. | |
| DARREN A. SMITH, | Judge Edmond E. Chang |
| Defendant-Petitioner. | |

**MEMORANDUM OPINION AND ORDER**

Darren Smith was convicted by a jury on eight counts of wire fraud, 18 U.S.C. § 1343, and sentenced to 60 months' imprisonment. CR. 193, Jury Verdict; CR. 222, Judgment at 1–2.[1] He moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, arguing that his trial counsel was ineffective at sentencing and that the government committed prosecutorial misconduct.[2] *See generally* R. 1, Smith's Mot.; R. 3, Smith's Br. For the reasons discussed below, Smith's motion is denied, and no certificate of appealability will issue. Smith also shall respond to the rule to show cause as described at the end of this Opinion.

---

[1]Citations to the record in the civil docket are "R." followed by the docket entry number and, if needed, a page or paragraph number. "CR." refers to the docket in the criminal case, *United States v. Smith*, No. 21-CR-00703-2.

[2]This Court has subject matter jurisdiction over this case under 28 U.S.C. § 2255 and 28 U.S.C. § 1331.

## I. Background

Smith ran two companies that provided medical equipment to the United States Department of Veterans Affairs. CR. 1, Indictment at 2; CR. 202, PSR ¶ 18. Smith came to know an employee of the Department, Andrew Lee, who worked with outside vendors like Smith to procure medical equipment for veterans. PSR ¶¶ 17–18. The two eventually reached an agreement whereby overpriced orders would be funneled to Smith's companies, and in exchange, Smith would pay kickbacks to Lee. PSR ¶ 18. In total, Smith was overpaid by more than $1,300,000, spanning about 100 patients and hundreds of transactions. PSR ¶ 28. For his part, Lee received more than $200,000 in kickbacks, which were originally intended to reflect a measure of 10% of the value of orders placed with Smith's companies but turned out to be less. PSR ¶ 22–23.

The grand jury charged Smith with eight counts of wire fraud for improper transactions associated with five Department patients. *See generally* Indictment. Eventually, the parties proceeded to a first trial, where the jury could not come to a unanimous verdict, so the Court granted Smith's motion for a mistrial. CR. 121, 11/17/23 Minute Entry. Retrial then was scheduled for April 2024, CR. 127, 12/04/23 Minute Entry, and after a six-day retrial, the jury returned a verdict, finding Smith guilty on all eight counts, CR. 191, 04/29/24 Minute Entry; Jury Verdict.

The parties then prepared for sentencing. The parties did not dispute the Sentencing Guidelines calculations or the resulting sentencing range, and the Court adopted the Probation Office's proposed calculation. CR. 230, Sentencing Tr. at

10:25–11:15. As relevant to Smith's current motion, a two-level Guidelines enhancement under § 2C1.1(b)(1) applied because Smith's offense involved multiple bribes. *Id.* 11:4–5; PSR ¶ 39. And a 14-level enhancement applied because the loss amount was more than $1,300,000. U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b)(1)(H); PSR ¶ 40; Sentencing Tr. at 11:5–6.

After resolving the parties' objections and adopting the presentence investigation report, the Court heard the parties' arguments on what sentence would be sufficient but not greater than necessary, 18 U.S.C. § 3553(a). Among other sentencing factors, the government emphasized the extensive nature of Smith's scheme, the seriousness of the offense, and the loss amount. Sentencing Tr. at 11:22–20:6. Smith's counsel meanwhile highlighted Smith's prior military service, compared his situation to already-sentenced defendants in another fraudulent scheme involving the Department of Veterans Affairs, and emphasized his ability to begin making immediate restitution payments toward the loss amount. *Id.* at 20:9–37:5.

The Court then discussed the sentencing goals and factors. Sentencing Tr. at 44:11–55:15. First, the Court noted the serious nature and circumstances of this several-year, public-corruption scheme. *Id.* at 45:18–47:20. The Court also noted the need to promote respect for the law and explained that Smith did not accept responsibility "until the very, very end." *Id.* at 47:21–48:10, 50:6–9. Smith's history and characteristics certainly were mitigatory on balance: he was a 60-year-old military veteran without criminal history, and he had health concerns, yet at the same time engaged in an extensive fraud scheme that suggested "some modest risk" of

3

recidivism. *Id.* at 48:21–49:2, 49:17–50:18. And the Court observed that Smith had strong connections with his family and friends and would be separated from them while imprisoned, all factors in his favor. *Id.* at 49:3–16. The Court also considered the kinds of sentences available (prison time being uniquely significant) and the need to afford adequate general and specific deterrence (especially to government vendors and purchasing agents). *Id.* at 50:19–51:23. Finally, the Court considered other public-corruption cases, including those raised by Smith's counsel, when acknowledging the need to avoid unwarranted sentencing disparities. *Id.* at 51:24–55:12. Smith ultimately was sentenced to 60 months' imprisonment. *Id.* at 55:13–15; Judgment at 2.

Smith chose not to appeal his conviction or sentence. This motion, R. 1, followed.

## II. Legal Standard

### A. Section 2255

Under 28 U.S.C. § 2255, a prisoner in custody pursuant to a federal sentence may move to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack …." 28 U.S.C. § 2255(a). In other words, to obtain relief under § 2255, Smith must show that the error asserted is "jurisdictional, constitutional, or is a fundamental defect which

inherently results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997) (cleaned up).[3]

Section 2255, however, "is not a substitute for direct appeal." *Vinyard v. United States*, 804 F.3d 1218, 1226 (7th Cir. 2015) (cleaned up); *see also Qualls v. United States*, 774 F.2d 850, 851 (7th Cir. 1985) (citing *United States v. Addonizio*, 442 U.S. 178, 184 (1979)). Consequently, "[a]ny claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted." *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017). "[A] petitioner can overcome [the procedural-default] hurdle by showing either cause for the default and actual prejudice from the alleged error, or that he is actually innocent." *Yang v. United States*, 114 F.4th 899, 912 (7th Cir. 2024) (cleaned up). There is an exception, however, for ineffective-assistance-of-counsel claims, which are not subject to the "cause and prejudice" standard. *See Massaro v. United States*, 538 U.S. 500, 503 (2003) ("[T]here is no procedural default for failure to raise an ineffective-assistance claim on direct appeal."). That is because bringing ineffective-assistance claims on direct appeal may create a risk that "defendants would feel compelled to raise the issue before there has been an opportunity fully to develop" the factual claims. *Id.* at 504. Here, many of Smith's claims are based on allegations that

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

his counsel was ineffective, so the Court proceeds under the *Strickland* standard where appropriate.

### B. Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. To win on his ineffective-assistance-of-counsel claim, Smith must meet the familiar two-element, performance-and-prejudice standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, he must show that his trial counsel's performance was deficient and that prejudice resulted. *Id.* at 687. For the performance element, the question is whether "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. On prejudice, the question is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Smith must satisfy *both* elements of the standard to be entitled to collateral relief. *Id.* at 687.

Judicial review of counsel's performance "must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. The Court must presume that "the challenged action might be considered sound trial strategy." *Id.* (cleaned up). Courts may reject ineffective-assistance-of-counsel claims under either prong without needing to address both. *Strickland*, 466 U.S. at 697.

### III. Analysis

In his motion, Smith focuses on the sentencing and raises three grounds for relief. First, Smith argues that he received ineffective assistance of counsel because his lawyer failed to object to the two-level sentencing enhancement under Guidelines § 2C1.1(b)(1). Smith's Mot. at 4; Smith's Br. at 1. Second, Smith contends that his counsel was ineffective for failing to argue several pertinent sentencing factors under 18 U.S.C. § 3553(a). Smith's Mot. at 5; Smith's Br. at 2. Finally, Smith contends that the government engaged in prosecutorial misconduct at sentencing. Smith's Mot. at 6; Smith's Br. at 2.

The Court begins with Smith's ineffective-assistance claim premised on the sentencing enhancement under § 2C1.1(b)(1). Smith contends that his trial counsel was ineffective for not arguing that the enhancement requires "separate and independent bribes" rather than one overarching agreement. Smith's Br. at 1. In his view, he had one continuous agreement, not multiple bribes, to pay 10% on any procurement order funneled to him. R. 13, Smith's Reply Br. at 4, 6–7, 13–14, 18–19. To support his argument, Smith provides quoted language from two cases that he contends were decided by the Seventh Circuit. Smith's Br. at 1.

That argument gets off to a poor start, because the quoted cases do not exist. Neither the government, R. 12, Gov't's Resp. at 10–11, nor this Court can locate either case or the relevant quoted language.[4] Tellingly, Smith does not insist in his reply

---

[4]Smith represents that the Seventh Circuit decided "*United States v. Salam*, 191 F.3d 446, 450 (7th Cir. 1999)" and held that "the number of agreements, not the number of

brief that these cases exist, and he instead cites two out-of-circuit cases that provide much less direct support for his argument. Smith's Reply Br. at 4, 6–7, 13–14, 18–19.

But the substance of Smith's argument also falls short, so he can show neither deficient performance nor prejudice. The jury found Smith guilty of eight *separate* counts of wire fraud, involving specific orders for five different Department patients. *See generally* Indictment; Jury Verdict. So Smith completed (and thus committed) eight different offenses. *See United States v. Yashar*, 166 F.3d 873, 875 (7th Cir. 1999); *see also id.* at 877 ("Separate offenses may be part of a common scheme …." (cleaned up)). Although the Sentencing Guidelines recognize that separately charged counts may still relate to a single bribe, that is only where the facts show "installment payments for a single *action.*" U.S.S.G. § 2C1.1 cmt. n.2 (U.S. Sent'g Comm'n 2023) (emphasis added). Smith may have reached one agreement to pay a 10% kickback, but each order that was funneled to him (the "action[s]") in exchange for a kickback was a separate bribe. *See United States v. Cui*, 2024 WL 3848513, at *7 (N.D. Ill. Aug. 16, 2024) ("A defendant completes the crime of bribery as soon as he gives or offers payment in exchange for an official act." (cleaned up)), *aff'd*, 163 F.4th 1072 (7th Cir. 2026).

In his reply brief, Smith relies on *United States v. Arshad*, 239 F.3d 276 (2d Cir. 2001), but that opinion actually undermines his argument. The Second Circuit

---

payments" drives the application of § 2C1.1(b)(1). Smith's Br. at 1. Similarly, Smith states that "*United States v. Owens*, 854 F.3d 870, 874 (7th Cir. 2017)," provides that "multiple payments … aris[ing] from one overall scheme or agreement" count only as one bribe. Smith's Br. at 1. But the Court can find neither decision.

developed a three-factor test to determine the applicability of § 2C1.1(b)(1). First, courts should consider whether there were multiple "action[s]," such as payments for "ongoing patient referrals" or "different applications for work papers." *Arshad*, 239 F.3d at 280. Second, installment payments may look like "a regular schedule of payments over a finite period of time toward a fixed final sum, rather than a series of intermittent and varied bribes." *Id.* at 281. And finally, payments that take different forms and different means favor the existence of multiple bribes. *Id.* at 282. Here, Smith's scheme involved the ongoing funnel of orders to his business with no fixed final sum (indeed, Smith presents the scheme as 10% of every order), and his payments to Lee were irregular in amount and form. PSR ¶¶ 16–23. The enhancement properly applied, so he did not receive ineffective assistance of counsel.

Smith's second basis for post-conviction relief is his view that trial counsel was ineffective for failing to make a number of arguments under the § 3553(a) factors. Smith's Mot. at 5; Smith's Br. at 2.[5] But most of the issues he raises and claims his

---

[5]Smith again cites a slew of cases that either do not exist or do not contain any language that could possibly support the propositions he claims are contained in those decisions.

The Court cannot locate any case by the name of *United States v. Morss* that involves a former Seton Hall professor, Smith's Br. at 2, nor can the Court find "*United States v. Rivera*, 993 F.3d 613, 621 (7th Cir. 2021)," or the quoted language, Smith's Reply at 9. Smith purports to provide an appendix of all cited cases and associated URLs. *Id.* at 22. But the URL for *Rivera* likewise leads nowhere, and none of the potentially identifying details in the URL (a possible docket number 19-2975 or a date of decision 04/20/2021) offer more insight.

Smith also cites *United States v. Jones*, 635 F.3d 909 (7th Cir. 2011), and *United States v. Scott*, 316 F.3d 733 (7th Cir. 2003). Smith's Reply Br. at 13, 17. These are real cases. But Smith suggests that *Jones* resulted in a conclusion that counsel was ineffective and that resentencing was required, Smith's Reply Br. at 13, 17, when in reality *Jones* affirmed a defendant's sentence, 635 F.3d at 921. Smith also states that *Scott* discussed the cumulative

9

counsel failed to discuss—sentencing disparities, his ability to pay restitution, and his lack of criminal history, Smith's Br. at 2; Smith's Reply Br. at 4–5, 9–19—in fact were central to his counsel's arguments at sentencing. Sentencing Tr. at 23:11–26:20, 27:10–25, 31:13–32:14, 33:3–9, 34:22–37:5. Indeed, the Court discussed Smith's lack of prior criminal history and the reasons why any sentencing disparity would be warranted given the balance of mitigating and aggravating factors in the case. *Id.* at 44:11–55:15. Smith's counsel thus was not ineffective, nor was Smith prejudiced.

At times, this second ineffective-assistance claim sounds more like a challenge to the substantive reasonableness of his sentence. For example, Smith discusses the "trial penalty," Smith's Reply Br. at 9, and his view that the sentence ran afoul of 18 U.S.C. § 3553(a) in part because he had "no aggravating circumstances," Smith's Br. at 2. To the extent that Smith intends these as freestanding claims, they are impermissibly brought via this § 2255 motion. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007). And if Smith instead argues that his counsel was ineffective for not drawing attention to these issues, he can show neither deficient performance nor prejudice because his argument lacks merit. Smith was not punished for exercising his constitutional right to a jury trial; despite his insistence that no aggravating factors existed, his 60-month sentence reflected several—his major role in a complex, costly scheme; his failure to accept responsibility until the very end; and the significance of public corruption and exploitation of fellow veterans.

---

effect of ineffective counsel, Smith's Reply Br. at 17, but *Scott* instead involved a direct appeal challenging one narrow condition of supervised release, 316 F.3d at 734.

Smith's third and last basis for post-conviction relief is his contention that there was prosecutorial misconduct. In his opening brief, Smith asserts, without any support, that the government presented false information and withheld favorable evidence relating to the loss amount. Smith's Br. at 2. In reply, he adds that the government at sentencing mischaracterized the scheme as involving "hundreds of bribes" instead of a single agreement. Smith's Reply at 4, 6–8, 15, 18–19.[6]

These arguments fail first as a threshold matter. Smith's loss-amount argument consists only of his bare assertions in his opening brief, and Smith does not clarify his view of the proper loss amount. Because the argument is underdeveloped, it is waived. *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009); *see also Santiago v. Streeval*, 36 F.4th 700, 710 (7th Cir. 2022) (noting that petitioners in post-conviction setting may waive arguments). And Smith's argument about the government's purported statements about "hundreds of bribes" could have been raised on direct appeal yet was not, so Smith procedurally defaulted the issue. *Delatorre*, 847 F.3d at

---

[6]On this argument, Smith again cites a bevy of cases that do not support his contention. Smith argues that *United States v. Aviles-Colon*, 536 F.3d 1 (1st Cir. 2008), which is real, remanded the case because of the misrepresentation of a loss amount. Smith's Br. at 2. But *Aviles-Colon* involved the remand as to one defendant because of a *Brady* violation. 536 F.3d at 8, 18–22. Smith also cites *United States v. Jones*, 965 F.3d 149 (2d Cir. 2020) as a case that "reversed a sentence," Smith's Br. at 2, but *Jones* both did not involve challenges to the sentence and affirmed the defendant's conviction, 965 F.3d at 153.

In his reply brief, Jones cites "*United States v. Johnson*, 605 F.3d 728, 731 (7th Cir. 2010)," for the proposition that prosecutorial exaggeration is improper. Smith's Reply Br. at 15. But *Johnson* does not appear to exist. Smith also references *United States v. Abbas*, 560 F.3d 660 (7th Cir. 2009), for the proposition that a miscalculated guidelines range "infects the entire sentencing process." Smith's Reply Br. at 15. *Abbas* is a real case and discusses sentencing, but it lacks the quote that Smith attributes to the decision.

843. Smith seeks to excuse this procedural default by citing his trial counsel's ineffectiveness, Smith's Reply Br. at 3–4, but his argument then fails for the same reasons his ineffective-assistance claim on the sentencing enhancement failed.

In any event, Smith's claim about the government's emphasis of hundreds of bribes fails for a more fundamental reason: the government never used that phrase once, let alone as a "repeated assertion." Smith's Reply Br. at 6–8. In fact, only the Court, not either party, used a similar phrase—"hundreds of *lies*"—because it was an accurate reflection of the scope of the scheme. Sentencing Tr. at 45:18–46:4 (emphasis added); PSR ¶ 28.

### IV. Conclusion

For the reasons discussed, Smith's § 2255 motion, R. 1, is denied. In order to obtain a certificate of appealability, Smith must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That standard is met only if "reasonable jurists could debate whether … the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (cleaned up). Smith's arguments clearly lack merit, as explained in this Opinion, so Smith has not made the requisite showing. No certificate of appealability shall issue.

One concern remains: potential sanctions against Smith for submitting false citations and quotations. By the Court's count, Smith falsified entire cases or quotations nearly a dozen times. Falsifying information "undermines the most basic foundations of our judicial system" and "imposes unjust burdens on the opposing party,

the judiciary, and honest litigants." *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 402 (7th Cir. 2015). District courts have both power under Civil Rule 11 and the inherent authority to impose monetary sanctions in collateral-attack proceedings. *See Alexander v. United States*, 121 F.3d 312, 315–16 (7th Cir. 1997); *Smith v. Gilmore*, 111 F.3d 55, 56 (7th Cir. 1997) (per curiam). The Court is mindful that pro se litigants, particularly in criminal cases, often labor under a lack of resources. But the answer is not free-wheeling submission of false citations, quotations, and holdings, all of which drains the resources of the judiciary and consequently harms all other litigants who call upon the courts to promptly decide cases. So the Court issues a rule for Smith to show cause why he should not be subject to monetary sanctions for the fabricated legal citations. Smith's response is due on or before September 4, 2026.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 7, 2026

13